## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| LORIE A. LEWIS, ) | |
| ) | |
|        *Plaintiff* ) | |
| ) | |
| v. ) | Docket No. 06-121-B-W |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| **Commissioner of Social Security,** [1] ) | |
| ) | |
|        *Defendant* ) | |

### REPORT AND RECOMMENDED DECISION[2]

This Social Security Disability ("SSD") appeal raises the question whether the commissioner transgressed the plaintiff's statutory and constitutional due-process rights when a hearing was not reconvened as contemplated prior to issuance of the instant decision. In the circumstances presented, I discern no underlying due-process transgression or prejudice flowing from failure to reconvene the hearing. Accordingly, I recommend that the decision of the commissioner be affirmed.

### I. Discussion

As the plaintiff observes, *see* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (Docket No. 8) at 4, Social Security applicants are afforded both statutory and constitutional due-

---

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), I have substituted currently serving Commissioner of Social Security Michael J. Astrue as the defendant in this matter.

[2] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on July 3, 2007, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority and page references to the administrative record.

process rights. Such applicants have a statutory right, upon request, to "reasonable notice and opportunity for a hearing[.]" 42 U.S.C. § 405(b)(1). The "right to personal appearance at a hearing" can be waived "only by a writing" meeting certain requisites. Social Security Ruling 79-19, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982 ("SSR 79-19"), at 393; *see also, e.g., Biswas v. Commissioner of Soc. Sec.*, No. 05-3828, 2007 WL 580523, at *1 (3d Cir. Feb. 26, 2007) ("Under Social Security regulations, an applicant's waiver of the right to a hearing is valid only if it is in writing and acknowledges that the applicant is cognizant of certain rights.").

In addition, "applicants for social security disability benefits are entitled to due process in the determination of their claims." *Holohan v. Massanari*, 246 F.3d 1195, 1209 (9th Cir. 2001); *see also, e.g., Yount v. Barnhart*, 416 F.3d 1233, 1235 (10th Cir. 2005) ("Social security hearings are subject to procedural due process considerations."). "At a minimum, the Constitution requires notice and some opportunity to be heard. Above that threshold, due process has no fixed content; it is flexible and calls for such procedural protections as the particular situation demands." *Mallette v. Arlington County Employees' Supplemental Ret. Sys. II*, 91 F.3d 630, 640 (4th Cir. 1996) (citations and internal quotation marks omitted); *see also, e.g., Eze v. Gonzáles*, 478 F.3d 46, 47 (1st Cir. 2007) ("[N]otice and an opportunity to be heard together comprise an essential principle of due process[.]") (citations and internal quotation marks omitted).

The plaintiff, who claims disability stemming from bipolar disorder, anxiety, personality disorder and dysthymia, applied for both SSD and Supplemental Security Income ("SSI") benefits. *See* Record at 17. Eligibility for SSD (unlike that for SSI) hinges in part on acquisition of insured status. *See, e.g., Chute v. Apfel*, No. 98-417-P-C, 1999 WL 33117135, at *1 n.2 (D. Me. Nov. 22, 1999) (rec. dec., *aff'd* Dec. 20, 1999) ("To be eligible to receive SSD benefits the plaintiff had to have been disabled on or before her date last insured . . .; however, eligibility for SSI benefits is not

dependent on insured status."). The plaintiff was insured for SSD purposes only through March 31, 1992, *see* Finding 2, Record at 19, and hence was obliged to demonstrate disability as of that time to qualify for SSD benefits, *see Chute*, 1999 WL 33117135, at *1 n.2.

Following denials of her SSI and SSD applications initially and on reconsideration, *see* Record at 59-62, 64-66, 360-64, 366-68, the plaintiff requested and was granted a hearing before an administrative law judge*, see id*. at 69-71, 79-83. The plaintiff, her representative – attorney Karen Nesbitt of the law office of Jackson & MacNichol – and medical expert Peter B. Webber, M.D., were present at the hearing, which was held before Judge Katherine Morgan on January 5, 2006. *See id*. at 32, 76. At the outset, Nesbitt amended the plaintiff's applications to seek a closed period of disability, commencing on January 1, 1992 and ending on June 1, 2005 – the date the plaintiff had started working at Wal-Mart. *See id*. at 32. Nesbitt then apprised Judge Morgan that her office was having difficulty securing treatment records from as many as six different treating sources: Dr. Painter, Maine Coast Memorial Hospital, Eastern Maine Medical Center, Down East Community Health, Paul Goodman at Down East Community Health, and Dr. Rajasekaren at Bayview Center for Mental Health. *See id*. at 33-36. She requested that the record be held open for two weeks following the hearing to allow for submission of that evidence. *See id*. at 36. Judge Morgan initially agreed to hold the record open for three weeks (until January 26), *see id*., but rethought this as she wrestled with the question of how to elicit Dr. Webber's testimony concerning the impact of those materials, *see id*. at 36-38, 42-44, 46-48. She decided instead to continue the hearing. *See id*. at 53-54. She asked Nesbitt when the records were expected; Nesbitt responded: "[T]he person who is handling this, in my experience, has been very diligent[,] and I'm expecting that if it is possible to get them we should have them within the next two weeks." *Id*. at 48.

Judge Morgan endeavored then and there to fix a precise date for the continued hearing, but Nesbitt was unsure of her calendar. *See id*. at 48-49. Judge Morgan indicated her office would contact Dr. Webber and Nesbitt to schedule the continued hearing for either the week of January 23 or the week of January 30. *See id*. at 49-50.[3] As the hearing concluded, the following colloquy took place:

> ALJ: . . . The record is no longer – well, I don't know how I should – we're not going to have the record open until January 26th, what I'm going to do is I will be expecting evidence, the record will obviously be clearly open[,] and we'll be rescheduling a hearing the week of January 23rd or the week of January 30th[,] and you'll send in the evidence whenever it comes in.
>
> ATTY: Yes.
>
> ALJ: So I won't formally say the record is open only until January 26th. The case is going to be continued[,] and so obviously you can send in evidence at any time. And when you do send it in[,] if you just mark it and say please expedite this and it needs to be rescheduled, the case needs to be rescheduled as soon as, you know, blah, blah, as soon as possible.
>
> ATTY: Should I call your assistant?
>
> \*\*\*
>
> ALJ: . . . I think the best thing is to call Ray Wallace.
>
> ATTY: Okay.
>
> \*\*\*
>
> ALJ: Okay. Thanks. So we can continue the case now, is that correct? So the record is kept open, the case is continued for another hearing.

*Id.* at 53-54.

Prior to the close of hearing, Dr. Webber testified briefly, indicating that the plaintiff's condition after October 2002 appeared to meet a disability listing based on the records then provided

---

[3] These dates were picked in part because Dr. Webber indicated that he would be unavailable from February 7-March 18, 2006. *See* Record at 46. Nesbitt agreed with Judge Morgan that it was important for Dr. Webber to be present at the continued hearing. *See id*. *(continued on next page)*

4

but that he had insufficient information to draw such a conclusion with respect to the period prior thereto. *See id*. at 44-46.[4] The plaintiff never testified. *See id*. at 32-54.

By decision dated April 26, 2006 Judge Morgan found the plaintiff disabled for purposes of SSI benefits for a closed period from May 13, 2003 through June 1, 2005 but not disabled at any time through her date last insured of March 31, 1992 for purposes of SSD benefits. *See* Findings 2-6, *id.* at 19-20.[5] In determining that the plaintiff had adduced no evidence that she suffered from a medically determinable impairment prior to her date last insured, Judge Morgan stated, in relevant part:

> The earliest medical records in evidence are laboratory test results dated May 1994 (Exhibit 12F), more than two years after the date the claimant's insured status expired. At the hearing, the claimant's representative requested that the record be left open to allow him time to gather additional medical evidence from various treating sources, including David Painter, M.D., Maine Coast Memorial Hospital, Eastern Maine Medical Center, Downeast Community Health Center, and Bayview Center for Mental Health. The record was held open for over two months after the hearing, but no further evidence was submitted. A phone call and letter from the Office of Hearings and Appeals to the representative's office regarding additional medical records yielded no response.

*Id*. at 19-20.[6]

By letter dated May 1, 2006 attorney Francis M. Jackson of Jackson & MacNichol wrote Judge Morgan to request reconsideration of her decision, stating, in relevant part: "It would be greatly appreciated if you would reconsider your decision based upon Dr. DiTullio's evaluation and the

---

at 46-47.

[4] In explaining that he found insufficient evidence to determine the plaintiff disabled prior to 2002, Dr. Webber testified, in relevant part: "There is a reference to a hospitalization even back in 1995, but I'm not quite sure when that hospitalization was, I have to assume it was '95 or prior to that date even. So it would be helpful if we could get something about that. The only notes I found were, that addressed things, were in Exhibit 5 in the year 2000, there was some comment about bipolar[,] but I didn't get a good sense that she would necessarily just at that time alone meet a listing at that one time frame. But I realize these things come and go and that would not prevent me from thinking she might meet, if there was significant records prior to that time." Record at 45-46.

[5] As Judge Morgan noted, *see* Record at 17, SSI benefits are not payable prior to the month following the month in which an application was filed, *see* 20 C.F.R. § 416.335. The plaintiff had filed for benefits on May 13, 2003. *See* Record at 1. The plaintiff does not challenge Judge Morgan's SSI determination. *See* Statement of Errors at 1.

[6] Asked at oral argument whether he agreed that Judge Morgan's office had tried to contact his office by phone and letter and received no response, the plaintiff's counsel stated that his office had no record of such contact but, beyond that, he had no way to tell. This falls short of controverting Judge Morgan's statement.

forms [that] were submitted to you by letter dated April 26, 2006. It appears that these records may have crossed in the mail with your decision. (Copies are enclosed for your reference)." *Id*. at 12. Jackson made no mention of the fact that the plaintiff's hearing had not been continued as contemplated. *See id*. The DiTullio materials consisted of a report dated April 15, 2006 and a mental residual functional capacity ("RFC") assessment dated April 14, 2006 by clinical psychologist William M. DiTullio, Ed.D. *See id*. at 372-75. Dr. DiTullio indicated that, on April 14, 2006, he had interviewed the plaintiff and conducted a mental-status examination of her after she was referred to his office by counsel. *See id*. at 372-73. He stated, in relevant part: "[I]t appears that [the plaintiff's] teenage and young adult failed efforts to hold a job indicate she had been significantly disabled by a bi-polar disorder prior to 3/31/1992." *Id*. at 373.[7]

By letter dated June 23, 2006 Jackson again wrote Judge Morgan, stating: "This letter will confirm the message that I received from your staff indicating that you will not reconsider the partially favorable decision in this matter based on Dr. DiTullio's evaluation. Under the circumstances, we will be appealing this matter to the Appeals Council." *Id.* at 10. Jackson again made no mention of the failure to reconvene the plaintiff's hearing. *See id*.

By letter dated June 26, 2006 Jackson wrote to the Appeals Council to request review of Judge Morgan's decision. *See id*. at 369. He stated, in relevant part:

> As set forth in the decision, the judge found that [the plaintiff's] medically determinable impairments did not go back to her date last insured in 1992. Shortly after the hearing counsel was finally able to obtain and submit a psychological evaluation regarding [the plaintiff] demonstrating that, in fact, her disability goes back to 1992. That material was submitted to the ALJ and after review her assistant called counsel's office to advise that the judge had reviewed it but declined to change her ruling regarding the onset date.

---

[7] A page is missing from the DiTullio report. *See* Record at 373-74. The plaintiff made no issue of the omission in her Statement of Errors, *see generally* Statement of Errors, and at oral argument her counsel acknowledged that he had not done so because nothing turns on the missing page, which he said contains only five words and a signature.

6

\*\*\*

>Please note that pursuant to Sims v. Apfel, [530 U.S. 108 (2000),] this is not intended to be a definitive statement of every issue which might be raised on appeal in the event this matter proceeds to the federal district court.

*Id*. He again made no mention of the failure to reconvene the hearing. *See id*. By letter dated August 2, 2006 the Appeals Council declined to review the decision, stating, in relevant part: "In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council [including the DiTullio report]. We found that this information does not provide a basis for changing the Administrative Law Judge's decision." *Id.* at 6.

As a matter of both statutory and constitutional due process, a Social Security applicant is not entitled to continuation of a hearing; rather, a claimant is to be afforded "reasonable notice and opportunity for a hearing[.]" 42 U.S.C. § 405(b)(2); *see also, e.g., Eze*, 478 F.3d at 47. Such notice and opportunity was provided in this case. At the plaintiff's behest, a hearing was convened at which she and her representative appeared and during which Judge Morgan offered to continue the hearing to enable her to submit records from six specified treating providers and to take testimony from a medical expert, Dr. Webber, regarding the impact on the plaintiff's claim of those late-submitted records. The plaintiff's representative indicated that she should be able to obtain whatever records were available within two weeks – indeed, she initially sought only a two-week extension to do so – and everyone present contemplated that the hearing would be reconvened during the week of either January 23 or January 30, following submission of that new evidence. Judge Morgan did indicate, at one point during the plaintiff's January 5, 2006 hearing, that Office of Hearings and Appeals ("OHA") staff would contact the plaintiff's counsel, as well as Dr. Webber, to schedule the continued hearing; however, at the end of the hearing, Judge Morgan directed Nesbitt to ask, when submitting records, that a hearing be scheduled as soon as possible and to phone a certain staff member. As the plaintiff's

counsel acknowledged at oral argument, his office never sent any materials or contacted the OHA again until, on or about April 26, he submitted the DiTullio materials. Indeed, according to Judge Morgan, his office failed even to respond to either a letter or a phone call from the OHA inquiring as to the status of the records prior to issuance of the partially adverse decision.

In this case, the plaintiff's entitlement to a continued hearing was conditioned on submission of some or all of six specified treating-source records and the contacting of the OHA no later than the week of January 30. Neither thing occurred. Even when afforded a second chance in the guise of a phone call and letter from the OHA prior to issuance of the instant decision, plaintiff's counsel did not respond. Instead, plaintiff's counsel submitted materials entirely other than those originally described – the DiTullio report and RFC – nearly three months beyond the contemplated date of the continued hearing. In circumstances such as these, in which an administrative law judge has offered what amounts to reasonable notice and opportunity to be heard, but a Social Security applicant has not availed herself of it, there is no underlying due-process violation. *See, e.g., Richardson v. Perales*, 402 U.S. 389, 404-05 (1971) (holding that procedural due process had been afforded in case in which Social Security applicant claimed lack of opportunity to cross-examine reporting physicians but had not taken advantage of opportunity to request that they be subpoenaed; noting, *inter alia*, "This inaction on the claimant's part supports the Court of Appeals' view that the claimant as a consequence is to be precluded from now complaining that he was denied the rights of confrontation and cross-examination.") (citation omitted).

In any event, even assuming *arguendo* that the failure to reconvene the hearing in this case could be said to have offended due process and/or transgressed the written-waiver requirement of SSR 79-19, reversal and remand is not warranted on those bases unless resultant prejudice is shown. *See, e.g., Biswas,* 2007 WL 580523, at *1 (although Social Security applicant did not waive right to

8

hearing in writing pursuant to SSR 79-19, "remand is warranted only if the ALJ's failure to hold a hearing prejudiced [the applicant]"); *Chuculate v. Barnhart,* 170 Fed. Appx. 583, 587 (10th Cir. 2006) (rejecting claim of due-process violation predicated on administrative law judge's denial of permission to submit post-hearing written question to vocational expert when "the ALJ's failure to forward plaintiff's unsupported question does not undermine confidence in the result in this case"); *Adams v. Massanari,* 55 Fed. Appx. 279, 286 (6th Cir. 2003) ("Clearly, in this case, the procedure used by the ALJ did not erroneously deprive Appellant of her interest in the fair determination of her eligibility for benefits, since the ALJ's decision to withhold [a post-hearing] report from the ME [medical expert] had no determinative effect on the outcome of Appellant's hearing."); *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984) (claim of failure to develop full and fair record, like claim that hearing has been held in absence of waiver of right to counsel, requires showing that Social Security applicant "was prejudiced as a result of scanty hearing. She must show that, had the ALJ done his duty, she could and would have adduced evidence that might have altered the result."); *Williams v. Apfel*, 59 Soc. Sec. Rep. Serv. 150, 159 (N.D. Ill.1998) (finding no merit in Social Security applicant's contention that administrative law judge should have given him opportunity to testify at his second hearing about his impairments and past work when applicant (i) had already testified at first hearing, (ii) failed to specify what additional testimony he would have given and (iii) did "not say how his additional testimony would have changed the result – an important omission given the ALJ's finding that [claimant's] testimony was completely incredible").

The plaintiff identifies no prejudice, merely stating in conclusory fashion that "the loss of the opportunity for hearing and presentation of her evidence cannot be harmless error." Statement of Errors at 5.[8] At oral argument, her counsel essentially reiterated that point. Nor is prejudice

---

[8] The plaintiff neither suggests that she was prejudiced by loss of opportunity to testify on her own behalf nor proffers testimony she *(continued on next page)*

9

otherwise apparent. Tellingly, plaintiff's counsel did not complain of loss of the opportunity for the continued hearing in requesting reconsideration from Judge Morgan or review from the Appeals Council. Nor is it likely that submission of the DiTullio materials (or, for that matter, testimony of the plaintiff herself) would have made any difference to Dr. Webber, who signaled that he needed to see contemporaneous treating records to arrive at the conclusion that the plaintiff was disabled prior to October 2002.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 11th day of July, 2007.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge

---

might have presented. *See generally* Statement of Errors.